### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL NO. MJM-24-252** |
| **GINO GELORMINO,** | |
| Defendant. | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by undersigned counsel, submits its sentencing memorandum in advance of the sentencing hearing in the above-captioned matter, currently scheduled for Monday, August 18, 2025, at 10:00 a.m. Gino Gelormino ("Defendant") pled guilty to Count One of the Indictment in this case (ECF No. 1), charging him with possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). As set forth more fully below, the Government requests that the Court sentence the Defendant to 57 months of incarceration to the Bureau of Prisons ("BOP").

### SENTENCING GUIDELINES

The Presentence Investigation Report ("PSR") found the Defendant's base offense level to be 20 based on United States Sentencing Guidelines ("USSG") § 2K2.1(a)(4)(B)(i)(I) and (II) because the Defendant is a prohibited person and the offense involved firearms capable of accepting a large capacity magazine as well as a firearm that is described in § 26 U.S.C. 5845(a). Two additional points are added pursuant to § 2K2.1(b)(1)(A) because the offense involved seven firearms. Four more additional points are added pursuant to § 2K2.1(b)(4)(B) because the firearms did not have a serial number.   The PSR accurately reflects a criminal history category of II based

on three points. Additionally, the Defendant accepted responsibility for his misconduct and accordingly the Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a). The Government also anticipates making a motion at sentencing pursuant to USSG § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. Therefore, the PSR found the adjusted offense level to be 23. The applicable guideline range for this offense level and criminal history category is 51 to 63 months. As further discussed below a sentence of 57 months is appropriate under the factors set forth in 18 U.S.C. § 3553(a).

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things)[1]:

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (18 U.S.C. § 3553(a)(2));

---

1   The Government has not copied the entirety of § 3553(a) into this memorandum. The portions of the statute cited herein are the portions most relevant to this sentencing.

- the applicable guidelines level ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 48 months of imprisonment. The Government will address certain factors in the following sections.

    **A.**    **Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense (18 U.S.C. § 3553(a)(1), (a)(2)(A)).**

This offense is serious. This investigation began as an investigation into alleged Dead Man, Inc. ("DMI") gang members in the Baltimore area. The Defendant was identified as a possible member or former member of this violent gang and an investigation ensued. Based on this investigation, a federal search warrant was authorized for the Defendant's residence. Inside of Defendant's residence, investigators located five fully built privately made pistols. Each of those firearms were loaded and ready for use and most of them were loaded with extended magazines. Three of them had various lights or sights attached to them. Also located was a privately manufactured receiver which is considered a firearm under the Gun Control Act. Most frighteningly is the fact that a 3D printed machine gun conversion device was located along with the above firearms—making it readily accessible to attach to the firearms and convert them from semi automatic to fully automatic. None of the firearms were serialized and thereby untraceable. Three ballistic vests were also located in the same closet – presumably one for each member of the household (the defendant, his wife, and his 16 year old daughter). In addition to the ammunition already loaded into the above firearms, an addition 1,176 rounds of assorted ammunition were also located.

The Defendant argues in his sentencing memorandum that there are "no aggravating factors such as the use of the weapons outside of the residence." ECF No. 26 at 2. The Government strongly disagrees. There are many aggravating factors in this case.

First, the Defendant had enough firepower between the numerous fully functioning ghost guns and the 1,258 total rounds of ammunition to harm many, many people had he so desired. And had he so desired, the Defendant would be ready to do so at a moment's notice. The firearms were loaded (many with extended magazines) and they were set up with various attachable lights and sights. One does not possess this many firearms fully loaded with extended magazines in addition to the thousands of rounds of ammunition if one is not ready and willing to use them. The entire purpose of an attached light is so that one can use that firearm in low light conditions. The entire purpose of an aftermarket attached red dot sight is so that one can focus it on its target and accurately shoot the weapon. In addition, Defendant's own sentencing memorandum contradicts the allegation that these weapons were not "possessed or used outside of the residence." In fact, on page three of the memorandum, Defense notes that the Defendant would remove the weapons from his home and take them to a "friend's farm to shoot them." Id. This action alone placed the public in danger.

Make no mistake, the Defendant is not and was not a simple gun enthusiast with an "addictive/obsessive personality." While the Government certainly has empathy for the attack that the Defendant says he sustained in 2018 and his proceeding discomfort even in his own home, this is an entirely different circumstance than someone simply purchasing one or two guns for self-protection. The Defendant had created an arsenal within his residence. What gives the Government the most pause (in addition to the many firearms) is the possession of the machine gun conversion

device as well as the three ballistic vests. The machine gun conversion device, when attached to any of the firearms recovered, would turn those firearms into fully automatic weapons in an instant. In addition to the machine gun conversion device, the Government is equally disturbed by the possession of the three ballistic vests. A ballistic vest serves its purpose only when one expects to be sustaining gun fire. The possession of each of these (presumably one for every household member) shows the Defendant's state of mind—that he fully expected to be engaged in gun fire at some point.

Second, the Defendant is a convicted felon who is specifically prohibited from possessing any firearms or ammunition, let alone six ghost guns, over a thousand rounds of ammunition, and a machine gun.

The Defendant will argue that the offense is "non-violent." That is true, in a technical, categorical sense. And the fact that the Defendant did not injure any civilians, or himself, or the investigators carrying out the search warrant is a factor in his favor. At the same time, however, writing off the Defendant's crime as "non-violent" is reductive and ignores much of the crime's substance. The crime was violent in the sense that possessing that amount of firepower could have resulted in people being hurt or killed.

Sometimes crimes like this one are incorrectly referred to as "victimless." The reality is that there *were* victims in this case. The residents of the greater Baltimore area are victims who disproportionately suffer from gun violence and no doubt are tired of armed felons perpetuating this problem. The sentence should take into consideration the impact on those individuals and communities. We should be mindful of the experience of families impacted by gun violence and by the cost inflicted on communities due to illegal gun possession, particularly privately made

˜5˜

firearms and machine guns.

This is a case about the Defendant's choices. This is not a case about something that happened *to* the Defendant. This is not a "situation" in which he found himself or some unavoidable event in which he was trapped. The Defendant made choices that led to the charges here. He chose to illegally possess six ghost guns with high capacity magazines, lights, sights, ballistic vests, and over a thousand rounds of ammunition. The Defendant's choices made this case. The sentence should reflect those choices.

Although the Defendant has taken responsibility for his actions, there is no doubt that his conduct was obviously dangerous. The Defendant exposed himself, his family, and the community to great harm. Accordingly, a total sentence of 57 months imprisonment is warranted and sufficient. The Government's recommendation would serve several § 3553(a) factors. It would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2).

**B.     The History and Characteristics of the Offender (18 U.S.C. § 3553(a)(1))**

The Defendant's criminal history prior to the instant offense paints a discouraging pattern. While it is true that his criminal history is dated, his pattern of assaultive behavior, especially in this context, should not be overlooked. Defense's memorandum notes that the Defendant suffered from opioid addiction in the past. In many cases, there is a pattern of convictions that coincides with suffering from addiction – thefts, simple drug possession, and quality of life crimes. However, that is not the case when it comes to the Defendant. While his criminal history does show two separate theft convictions, his history also shows an alarming pattern of assault convictions. The Defendant has three separate convictions for assault in the second degree as well as a conviction

for assault in the first degree. In Maryland, the crime of assault in the first degree is more serious than assault in the second degree as it requires an intent to cause serious bodily injury and/or use of a firearm in the commission of an assault.2 His past shows that he is no newcomer to violent behavior. This is especially troubling when coupled with the facts of the instant case - possession of numerous firearms, large amounts of ammunition, and a machinegun.

Clearly the Defendant's past reflects one of a recidivist nature and a violent one at that. As such, the sentence imposed in this case should reflect the Defendant's criminal history and his dangerous choices in the instant case. Taking into consideration the Defendant's background, a sentence of 57 months is necessary, rather than the Defendant's recommendation of a downward variant sentence.

First, a sentence below the guidelines range would place too much emphasis on one or two § 3553(a) factors. The Defendant will likely focus on his improvements since he was last convicted, his children, new baby, and extended family support, growing up with a single mother, struggles with substance abuse and PTSD from his 2018 incident, and on the unlikelihood that he will engage in criminal conduct in the future. However, those are not the only factors at issue here. The Defendant's recommendation does not reflect the seriousness of the offense, the need to send a reasonable message of general deterrence, the need to promote respect for the law, to provide just punishment, or the need to avoid unwarranted disparities with similarly situated defendants.

Second, even focusing on those § 3553(a) factors, there are aspects of the Defendant's history and characteristics that clearly reflect a need to further protect the community. The facts of this case and the Defendant's criminal history are matters of grave concern in that regard.

---

2 Maryland Criminal Code 3-202

Unfortunately, the facts and circumstances of this case in addition to the Defendant's history of assault convictions suggest the need for a substantial sentence within the guidelines range.

Additionally, the USSG, for whatever reason, provides enhancements for unserialized firearms, high-capacity magazines, and National Firearms Act weapons, but not when someone possesses all three at the same time. This lack of accountability is lost on the Government. Having six ghost guns with high capacity magazines <u>and</u> a machinegun is extremely dangerous and should result in a sentence within the guidelines. As such, a sentence of 57 months in the middle of the Defendant's sentencing guidelines is warranted.

The facts and circumstances of this case suggest the need for a substantial sentence. There is precisely no reason a downward variant sentence is warranted.

### C.   The Purposes of Sentencing Including the Need to Send a Reasonable Message of General Deterrence (18 U.S.C. § 3553(a)(2)).

The Defendant's recommended downward variant sentence would not send an appropriate message to other potential offenders. Such a sentence would be invariably cited by other defendants seeking minimal punishment based on alleged post-offense rehabilitation. For good or ill, it has become a common aspect of sentencing in this District for defendants to cite to individual other cases (in sentencing contexts and in compassionate release contexts) in support of comparatively lower sentences. To some degree, every sentencing has become a measuring stick for every other sentencing despite the fact that every case is different. When the Government is seen as acceding to or not opposing sentences that do not send a reasonable message of general deterrence, the perceived precedential value becomes even stronger. In this respect, a 57-month sentence will send a message to other offenders as a measure of what is appropriate punishment.

A lower sentence fails to accomplish that goal. The facts of this case and the Defendant's record support the Government's recommendation.

## CONCLUSION

The Defendant, for lack of a better term, was prepared for war. He possessed an arsenal in his home complete with multiple untraceable firearms loaded with high capacity magazines. He outfitted some of those firearms with flashlights and red dot sights. He had on hand over a thousand rounds of ammunition. He had enough ballistic vests for himself, his wife, and his 16 year old daughter. All of this in addition to a machine gun. The Defendant has, by his own admission, an addictive and obsessive personality in addition to a criminal history wrought with assault convictions. All these factors when put together paint a dangerous and deadly picture. A sentence of 57 months of incarceration to the BOP is sufficient, but not greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:_____/s/_____
Sarah Simpkins
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2025, a copy of the foregoing was sent by ECF service to Christopher J. Purpura, Esq., counsel for the Defendant.

                                            _____/s/_____
                                            Sarah Simpkins
                                            Assistant United States Attorney